UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Joseph Loglisci,<br>                    Plaintiff,<br><br>             -against-<br><br>The City of New York, Stephan Munafo, Undercover Police Officer Shield Number 9386, John Patane, Anthony Demonte, Christopher Bender, Jason Del Toro, Robert Lotufo, Joseph Petrelli, Undercover Police Officer Shield Number 352, John Does 1 though 10,<br><br>                    Defendants | ECF CASE<br><br>FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL<br><br>09 Civ. 1220 (SHS) (THK) |

### PRELIMINARY STATEMENT

1.      This is an action for money damages brought pursuant to the Civil Rights Act of 1871, 42 U.S.C. §§ 1983 and 1988 for the defendants' commissions of acts under color of law in violation of plaintiff's rights under the Fourth and Fourteenth Amendments to the Constitution of the United States and the Constitution and laws of the State of New York.

### JURISDICTION

2.      This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §§ 1983 and 1988.

3.      Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 and 1367.

### VENUE

4.      Venue is proper pursuant to 28 U.S.C. § 1391(b) in that, *inter alia*, the events giving rise to the claim occurred in the Southern District of New York.

### JURY DEMAND

5.      The plaintiff demands a trial by jury on each and every one of his claims as pled

herein.

## PARTIES

6. Plaintiff JOSEPH LOGLISCI is a citizen of the United States and a resident of Kings County. Until the time of his arrest, he worked as a baker at Sapienza's Bagels and Deli in Howard Beach, New York.

7. Defendant THE CITY OF NEW YORK (the "City") is a municipal corporation within the State of New York.

8. The New York City Police Department (the "NYPD") is the department of the City responsible for, among other functions, arresting persons for offenses and maintaining custody over such persons prior to their initial appearance in court. At all times relevant hereto, the NYPD, together with the City, was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, the NYPD, together with the City, was responsible for enforcing the rules of the NYPD, and for ensuring that NYPD personnel obeyed the Constitutions and laws of the United States and of the State of New York.

9. At all relevant times herein, defendant STEPHAN MUNAFO was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

10. At all relevant times herein, defendant Munafo's shield number was 25679.

11. At all relevant times herein, defendant Munafo held the rank of police officer.

12. At all relevant times herein, defendant Munafo's command was the Narcotics Borough Manhattan South.

13. At all relevant times herein, defendant UNDER COVER POLICE OFFICER SHIELD NUMBER 9386 ("U.C. 9386") was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

14. Plaintiff is unable to determine the actual name or rank of defendant U.C. 9386.

15. At all relevant times herein, defendant U.C. 9386's command was the Narcotics Borough Manhattan South.

16. At all relevant times herein, defendant JOHN PATANE was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

17. At all relevant times herein, defendant Patane held the rank of Lieutenant.

18. At all relevant times herein, defendant Patane's command was the Narcotics Borough Manhattan South.

19. At all relevant times herein, defendant ANTHONY DEMONTE was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

20. At all relevant times herein, defendant Demonte's shield number was 915.

21. At all relevant times herein, defendant Demonte held the rank of sergeant.

22. At all relevant times herein, defendant Demonte's command was the Narcotics Borough Manhattan South.

23. At all relevant times herein, defendant CHRISTOPHER BENDER was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

24. At the time of Plaintiff's arrest, defendant Bender held the rank of police officer

25. Defendant Bender's current shield number is 1205.

26. Defendant Bender currently holds the rank of Detective.

27. At all relevant times herein, defendant Bender's command was the Narcotics Borough Manhattan South.

28. At all relevant times herein, defendant JASON DEL TORO was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

29. At the time of Plaintiff's arrest, Defendant Del Toro held the rank of police officer.

30. Defendant Del Toro's current shield number is 4218.

31. Defendant currently holds the rank of Detective.

32. At all relevant times herein, defendant Del Toro's command was the Narcotics Borough Manhattan South.

33. At all relevant times herein, defendant ROBERT LOTUFO was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

34. At all relevant times herein, defendant Lotufo's shield number was 4648.

35. At all relevant times herein, defendant Lotufo held the rank of detective.

36. At all relevant times herein, defendant Lotufo's command was the Narcotics Borough Manhattan South.

37. At all relevant times herein, defendant JOSEPH PETRILLI was employed as a police officer by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

38. At all relevant times herein, defendant Petrelli held the rank of detective.

39. At all relevant times herein, defendant Petrelli's command was the Narcotics Borough Manhattan South.

40. At all relevant times herein, defendant UNDER COVER POLICE OFFICER SHIELD NUMBER 352 ("U.C. 352") was employed by the NYPD and was acting in the capacity of agent, servant, and employee of the City.

41. Plaintiff is unable to determine the actual name or rank of defendant U.C. 352.

42. At all relevant times herein, defendant U.C. 352's command was the Narcotics Borough Manhattan South.

43. At all relevant times herein, defendant JOHN DOES 1 through 10 were police officers employed by the NYPD and each was acting in the capacity of agent, servant, and employee of the City.

44. Plaintiff is unable to determine the actual names of John Does 1 through 10 at this time and thus sues them under fictitious names.

45. At all times relevant herein, the individual defendants were acting under color of law in the course and scope of their duties and functions as agents, servants, employees and officers of the City and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. The individual defendants were acting for and on behalf of the City at all times relevant herein with the power and authority vested in them as officers, agents and employee of the City and incidental to the lawful pursuit of their duties as officers, employees and agents of the City.

## STATEMENT OF FACTS

46. On May 28, 2008 at approximately 3:15 PM, plaintiff Joseph Loglisci was lawfully in the vicinity of Rutgers and Madison Streets in New York City.

47. Defendants Munafo, U.C. 9386, Patane, Demonte, Bender, Del Toro, Lotufo, Petrelli,

and U.C. 352 were part of a team of police officers conducting a "buy and bust operation."

48. At that time and place and without any probable cause to do so, one of the defendant officers came up from behind Mr. Loglisci and handcuffed him.

49. Several other defendant officers were also present during, and participated in, Mr. Loglisci's arrest.

50. After arresting him, a number of the defendant officers placed Mr. Loglisci in a waiting police vehicle, in which he was driven around — handcuffed behind his back the entire time — for at least five hours.

51. Mr. Loglisci was eventually transported to the NYPD's 7th Precinct at 19 1/2 Pitt Street.

52. While at the 7th Precinct, Mr. Loglisci was subjected to a strip search in which officers directed him to lift up his shirt, drop his pants and underpants, lift up his genitals, turn around, squat and cough.

53. Mr. Loglisci was eventually brought by the police to Central Booking at 100 Centre Street.

54. The officers at the Precinct as well as those who transported him to Central Booking advised Mr. Loglisci not to seek treatment for the injuries caused by the handcuffs as they said that would delay his arraignment.

55. A felony complaint was filed against Mr. Loglisci charging him with Criminal Sale of a Controlled Substance in the Third Degree (N.Y. Penal Law § 220.39).

56. After more than 24 hours, Mr. Loglisci was arranged on the felony complaint and bail was set.

57.  On June 3, 2008, after six days in custody, Mr. Loglisci was finally released, pursuant to NY CPL § 180.80 for the District Attorney's failure to dispose of the felony complaint or to commence a hearing thereon.

58.  The case was adjourned to July 29, 2008.

59.  On July 29, 2008, the charge against Mr. Loglisci was dismissed on the motion of the New York County District Attorney's office with the prosecution stating that it could not prove the case beyond a reasonable doubt.

60.  The NYPD has a formal policy, contained in its Patrol Guide, by which it authorizes strip searches only in situations where "the arresting officer reasonably suspects that weapons, contraband, or evidence may be concealed upon the person or in the clothing in such a manner that they may not be discovered by the previous search methods. Other factors that should be considered in determining the necessity for a strip search include, the nature of the crime (serious violent felony), arrest circumstances, subject's reputation (extremely violent person), act of violence, and discoveries from previous searches."  Additionally, an NYPD directive, limiting and clarifying the strip search policy, was issued on May 13, 2004.

61.  This notwithstanding, on information and belief, the NYPD has, and had at the time of the incident giving rise to this Compliant, a *de facto* policy and practice of strip-searching persons for reasons other than those specified in the Patrol Guide or NYPD directives.

62.  As a result of all the foregoing, Mr. Loglisci lost his job and sustained, *inter alia*, physical injuries to his wrists, arm and shoulder, emotional distress, embarrassment, humiliation, anxiety, depravation of his liberty and a violation of his constitutional rights.

## NOTICE OF CLAIM

63.     A Notice of Claim was filed in this matter on August 25, 2008.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the Individual Defendants

64.     All other paragraphs herein are incorporated by reference as though fully set forth.

65.     By arresting, detaining, charging and searching plaintiff, the individual defendants engaged under color of law in the violation of plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983 to, *inter alia*, be free from unreasonable searches and seizures, false arrest and imprisonment, excessive force and malicious prosecution.

### SECOND CAUSE OF ACTION
### 42 U.S.C. § 1983 Against the City of New York

66.     All other paragraphs herein are incorporated by reference as though fully set forth.

67.     Municipal liability for the violations of plaintiff's Fourth and Fourteenth Amendment rights rests upon the grounds set forth below.

68.     At all times material to this complaint, the defendant City, acting through the NYPD and the individual defendants, had *de facto* policies, practices, customs and usages which were a direct and proximate cause of the unconstitutional conduct alleged herein.

69.     At all times material to this complaint, the defendant City, acting through the NYPD and the individual defendants, had *de facto* policies, practices, customs and usages of failing to properly train, screen, supervise or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said

defendants. The policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

### THIRD CAUSE OF ACTION
### Pendant State Law Claim for
### False Arrest and False Imprisonment

70. All other paragraphs herein are incorporated by reference as though fully set forth.

71. By the actions described above, the individual defendants, jointly and severally, violated the plaintiff's rights under New York law to be free from false arrest and false imprisonment, as a direct and proximate result of which he suffered the loss of physical liberty and emotional distress and suffering.

72. Municipal liability for these torts rest upon principles of *respondeat superior*.

### FOURTH CAUSE OF ACTION
### Pendant State Law Claim for
### Malicious Prosecution

73. All other paragraphs herein are incorporated by reference as though fully set forth.

74. By the actions described above, the individual defendants, jointly and severally, violated plaintiff's rights under New York law to be free malicious prosecution, as a direct and proximate result of which the plaintiff suffered continued damage in his attempt to clear himself from the false and maliciously imposed charges.

75. Municipal liability rest upon principles of *respondeat superior*.

### FIFTH CAUSE OF ACTION
### Pendant State Law Claim for
### Assault and Battery

76. All other paragraphs herein are incorporated by reference as though fully set forth.

77. By the actions described above, the individual defendants, jointly and severally

violated the plaintiff's rights under New York law to be free from assault, battery and battery committed in performance of public duty or authority, as a direct and proximate result of which he suffered and continues to suffer from physical pain and injury, and emotional distress and suffering.

78. Municipal liability for these torts rest upon principles of *respondeat superior*.

### SIXTH CAUSE OF ACTION
### Pendant State Law Claim for
### Violation of Rights under New York State Constitutional

79. All other paragraphs herein are incorporated by reference as though fully set forth.

80. In arresting, detaining and using excessive, unreasonable and unjustified force against the plaintiff without sufficient cause, the individual defendants, jointly and severally violated the Plaintiffs rights under Article I, Section 12 of the New York Constitution.

81. Municipal liability for these torts rest upon principles of *respondeat superior*.

WHEREFORE, the plaintiff requests that this Court:

1. Assume jurisdiction over this matter;

2. Award compensatory and punitive damages to plaintiff against the defendants, jointly and severally;

3. Award plaintiff reasonable costs, disbursements and attorneys' fees; and

4. Grant any other relief the court deems appropriate.

Dated: New York, New York
       June 9, 2009

                                                    Respectfully submitted,

                                                   Darius Wadia, L.L.C.

                                                   /s/
                                                 _____
                                                 By:  Darius Wadia (Bar number DW8679)
                                                 Attorney for Plaintiff
                                                 233 Broadway, Suite 2208
                                                 New York, New York  10279
                                                 (212) 233-1212/1216
                                                 dwadia@wadialaw.com